387 S.E.2d 325

**Michele Andrea SHANK**

v.

**Richard L. SHANK.**

**No. 18566.**

Supreme Court of Appeals of West Virginia.

Dec. 8, 1989.

Margaret Phipps Brown, Brown & Chices, Huntington, for Michele Andrea Shank.

George Stolze, Huntington, for Richard L. Shank.

BROTHERTON, Chief Justice:

Michele Shank appeals from the final divorce order entered on December 19, 1986, by the Circuit Court of Cabell County, which granted her a divorce on grounds of cruelty but determined that certain business holdings of her husband, Richard Shank, were his separate property and thus not subject to equitable distribution.

Michele and Richard Shank were married on October 26, 1963, in Cabell County, West Virginia. They have two children, an emancipated daughter and a son who was sixteen years old when divorce proceedings were commenced on May 13, 1985. Mrs. Shank states that prior to her marriage, she was awarded a scholarship to attend college, which she relinquished at her husband's request in order to assume full-time housekeeping responsibilities. Mrs. Shank also provided services to her husband's businesses, including secretarial work, payroll, taxes, and planning Christmas parties and advertising campaigns, for which she apparently received a salary at various times over the years.

Throughout this marriage, Richard Shank was employed primarily in two property management businesses, Shank's Oil Company, Inc. ("Shank's Oil"), and Shank's Enterprises. Shank's Oil, a closely held corporation, was established by Richard Shank's father. In 1960, Shank's Oil operated two taxi companies, a gasoline distributing company, and a tire retailing and wholesaling company. The last of these four going concerns, Shank's Tire Service, had been sold or liquidated by 1983. Over a period of years from 1960 to 1970, the elder Mr. Shank made gifts of approximately 450 shares of Shank's Oil common stock to his sons, Richard and Joseph, Jr., while retaining approximately 25 shares for himself. In 1984, Shank's Oil's remaining assets were three parcels of commercial real estate. Richard and Joe purchased the other family business, Shank's Enterprises, from their father in the 1970's.

In the proceedings below, the circuit court found that Richard Shank's interest in Shank's Oil was his separate property and adopted the valuation of the property proposed by his accountant, Ben Bagby. Mr. Bagby testified that the value of Shank's Oil was equivalent to the value of the three parcels of real estate owned by the corporation, all located in Huntington, West Virginia. In placing a value on Shank's Oil, Mr. Bagby relied upon appraisals of its properties performed at his request by Leland F. Bunch, a real estate appraiser.

Shank's Oil property located at 330—20th Street, in Huntington, which Mr. Bunch valued at $235,000 on November 13, 1972, was appraised at $470,000 as of De-

cember 31, 1984. Mr. Bunch attributed a portion of the increased value of this property to the addition of partitions, heat, and plumbing, as well as the reconditioning and insulation of some areas of the building.[1] An increase in the value of the second piece of Shank's Oil property, located at 1600 Commerce Avenue, from $100,000 on July 25, 1978, to $165,000 on December 31, 1984, was attributed to changes in the building and "the general upkeep of the building." Mr. Bunch had not previously appraised the third piece of Shank's Oil property, located at 740 Sixth Avenue. However, he did not believe that it had increased in value along the same lines as the other two properties, and he estimated its value to be $90,000.

Based primarily upon Mr. Bunch's appraised values of these three properties, Mr. Bagby arrived at a current value per share of $1,363 for the Shank's Oil stock. Mr. Bagby concluded that the value of Richard Shank's 225 shares of stock on December 31, 1984, was $306,450, and estimated that the value of the elder Mr. Shank's original gifts exceeded by approximately $60,000 the current value of Richard Shank's stock. For this reason, Richard Shank argued that his stock in Shank's Oil was his separate property and not subject to equitable distribution.

Mrs. Shank's expert, accountant Charles W. Wright, based his estimate of the value of Shank's Oil solely upon an amended 1981 buy/sell agreement entered into between Richard and Joe Shank, Jr., under the terms of which the survivor would purchase the stock of the first to die for the sum of $600,000. The agreement was funded by life insurance policies on the lives of each brother.[2] From the $600,000 figure Mr. Wright deducted $171,600, the value he attributed to the gifts Richard Shank received from his father, to arrive at an interest in Shank's Oil he estimated to be worth $428,400 as of December 31, 1984. Mr. Wright believed Mrs. Shank was entitled to one-half, or $214,200.

At the conclusion of the hearing, the circuit court adopted Mr. Bagby's valuation of Shank's Oil. In its final order, the court found that Shank's Oil was a gift to Richard Shank from his father and placed no value on Richard Shank's interest in Shank's Oil for purposes of equitable distribution because "the value of said corporation does not exceed the value of the gift."[3] The appellant, Michele Shank, argues that the circuit court erred in finding that Mr. Shank's interest in Shank's Oil was his separate property and thereby failing to distribute Mr. Shank's interest in Shank's Oil in accordance with the principles of equitable distribution contained in West Virginia law. Mrs. Shank now urges this Court to apply the source of funds rule to the property at issue and remand this case to the Circuit Court of Cabell County for further proceedings.

West Virginia is a "dual property" jurisdiction in which property can be characterized as part separate and part marital. While courts across the country have varied in their treatment of mixed property, the West Virginia Legislature "dealt with the combination issue by adopting the source of funds approach in its definitions of separate and marital property." Krauskopf, *Classifying Marital and*

---

1. Mr. Shank also testified about improvements to the same property, including the addition of a 30' × 180' metal building onto the back of the existing building. In addition, he stated that Federal Express, one of the tenants, paid for certain improvements to the building. Mr. Shank acknowledged that these renovations enhanced the value of the building.

2. In a 1979 agreement, Shank's Oil was valued at $450,000. Richard Shank testified, "It wasn't a buy-sell agreement. Neither one of us would pay that for the other person's half. That was just an insurance for us to live on with our families." Addressing the fact that the value increased from $450,000 to $600,000, Mr. Shank stated, "That was just a figure that we felt we could afford to pay on. In other words, we could afford to pay the premiums. We could have raised it to $2,000,000 each if we had the money."

3. The court evenly divided the net value of the remaining marital assets. The court concluded that Richard Shank's interest in the Shank's Enterprises partnership was marital property subject to equitable distribution. Thus, Richard and Michele Shank each received $35,602 as their marital share of Shank's Enterprises.

*Separate Property—Combinations and Increase in Value of Separate Property,* 89 W.Va.L.Rev. 997, 1000–1001 (1987)[4] The source of funds rule "classifies a particular piece of property depending upon the source of funds or effort which created its value." *Id.* "Separate property" in West Virginia includes both "property acquired by a party before marriage", W.Va. Code § 48–2–1(f)(1) (1986), and "property acquired by a party during marriage by gift ...", W.Va.Code § 48–2–1(f)(4). The passive appreciation of separate property, or "[a]ny increase in the value of separate property ... which is due to inflation or to a change in market value resulting from conditions outside the control of parties," is also considered to be separate property. W.Va.Code § 48–2–1(f)(6).[5] Separate property is exempted from division under the State's equitable distribution statute.

█ West Virginia Code § 48–2–1(e)(1) defines "marital property" as "all property and earnings acquired by either spouse during a marriage ... except that marital property shall not include" that which is defined as separate. This definition also includes as marital property the active appreciation of separate property, or "[t]he amount of any increase in value in the separate property of either of the parties to the marriage, which increase results from (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property, or (B) work performed by either or both of the parties during the marriage." W.Va.Code § 48–2–1(e)(2). The marital property of the parties to a divorce is subject to equitable distribution. W.Va.Code § 48–2–32(a).

█ In this case, Mr. Shank contends that the increased value of the real estate owned by Shank's Oil is due exclusively to inflation. However, Mrs. Shank argues that Shank's Oil has not increased in value solely as a result of passive appreciation, but that her husband's active management, as well as the expenditure of other marital resources, accounted for a significant portion of the increase in value of Richard Shank's share of the corporation since its acquisition. Mrs. Shank concludes that her husband benefited from their marital partnership by diverting marital assets to his separate property, and thus the increase in value of Shank's Oil is marital property which should be subject to equitable distribution.

Although he admits that some increase in the value of the Shank's Oil properties was due to the expenditure of resources and labor, Mr. Shank argues that no evidence was presented at the hearing which proves that the resources expended were marital property or that the labor expended was that of either of these parties. Furthermore, he argues that any such increase in the value of Shank's Oil did not keep pace with the rate of inflation during the same period. Mr. Shank concedes that if his Shank's Oil stock had increased in value as a result of the expenditure of marital funds or due to the efforts of either of these parties, the application of the source of funds approach would dictate that the property be subject to equitable distribution. However, in this case, the trial court found no evidence that this type of increase had occurred.

It is clear from the definition contained in W.Va.Code § 48–2–1(f)(4) that the Shank's Oil stock Richard Shank received from his father was his separate property, acquired both before and during his mar-

---

**4.** *See generally,* Crandall, *Critique of West Virginia's New Equitable Distribution Statute,* 87 W.Va.L.Rev. 87 (1984).

**5.** Professor Krauskopf notes that the West Virginia statute defines increase by work as marital property and increase due to market conditions as separate property, but the definitions do not suggest which party carries the burden of proof. However, she concludes that "all increase in separate property should be classed as marital unless the separate property owner sustains the burden of showing that the increase is due to market conditions beyond the control of the parties." Krauskopf, *Classifying Marital and Separate Property—Combinations and Increase in Value of Separate Property,* 89 W.Va.L.Rev. 997, 1022 (1987).

riage. Furthermore, there was little evidence presented at the hearing below upon which the court could have found that this separate property became marital property through the investment of marital efforts or resources. In a divorce proceeding, findings of fact made by the trial court based upon conflicting evidence should not be disturbed upon appeal unless they are clearly erroneous or against the preponderance of the evidence. *Fizer v. Fizer*, 172 W.Va. 704, 310 S.E.2d 465 (1983).

On the record now before us, we cannot conclude that the trial court's decision to exclude Shank's Oil from the property division as separate property was either clearly erroneous or against the preponderance of the evidence. The trial court determined from the evidence presented that the current value of Shank's Oil is not greater than the amount of the gift Richard Shank originally received from his father. If an increase in the value of this separate property were attributable to active appreciation, perhaps Mrs. Shank would be entitled to a marital share. However, the trial court was convinced by expert testimony that there was no active appreciation in the value of Shank's Oil, and thus it remained Richard Shank's separate property.

For the foregoing reasons, the December 19, 1986, order of the Circuit Court of Cabell County is hereby affirmed.

Affirmed.