534 S.E.2d 781

**Sharan DABABNAH, Plaintiff Below, Appellee,**

v.

**Mousa I. DABABNAH, Defendant Below, Appellant.**

No. 26902.

Supreme Court of Appeals of West Virginia.

Submitted May 3, 2000.

Decided July 12, 2000.

Richard M. Gunnoe, Esq., Ziegler & Gunnoe, Hinton, West Virginia, Attorney for Appellee.

H. Truman Chafin, Esq., Letitia A. Neese, Esq., Williamson, West Virginia, Attorneys for Appellant.

PER CURIAM:

In this case, Dr. Mousa I. Dababnah (the "doctor") appeals a final order of the Circuit Court of Raleigh County that disposes of several issues in a lengthy divorce proceeding stretching back some seven years. This Court granted the doctor's appeal regarding the division of certain marital assets and an award of attorney fees. For the reasons set forth below, we affirm the final order of the trial court.

## I.

### BACKGROUND

Dr. and Mrs. Dababnah married in 1974 and the doctor began his practice of medicine in Raleigh County, West Virginia in 1976. In

1993, his wife of many years, Sharan Dababnah, wished to end their marriage. Sharan filed for divorce on December 21, 1993 in the Circuit Court of Raleigh County. What ensued was a seven year battle that has produced at least two federal lawsuits, two appeals to this Court, the hiring and firing of at least seven attorneys, the occasional incarceration of Dr. Dababnah, and countless motions before the lower court. Because of the long history and voluminous nature of the record,[1] we shall restrict our background to the information directly relevant to this appeal.

On March 18, 1994, a family law master entered a Temporary Order in the divorce proceeding, retroactive to the first of that year. That order established visitation, granted possession of a car and the family home to Sharan, and ordered the doctor to pay spousal support, child support, and to maintain assorted insurance coverages. The doctor repeatedly refused to submit to this order and Sharan was forced to obtain court ordered suggestions to obtain money from the doctor's accounts. The court found the doctor to be in contempt on several occa-

sions, and as a result, the doctor spent time in jail.

The family law master's final order, as entered by the circuit court on June 22, 1995, affected several assets that are the subject of this appeal. Along with other dispositions, the order awarded Sharan one-half of an investment account maintained with the firm of Wheat First—Butcher Singer (the "Wheat First Account"). Because the doctor had not been paying the support ordered earlier, the law master also awarded Sharan certain lump sum payments from the sale of property, in lieu of alimony. The order called for the sale of property located on North Kanawha Street in Beckley, a lot at Pine Hill in Summers County, and a residence in Shady Spring, all located in West Virginia. The order also demanded that the doctor inform the court of any pension or retirement accounts so that it could make a proper allocation of any funds in such accounts. Finally, the order stated that the record would remain open in the case in the event that the court or Sharan Dababnah discovered any other assets held by the doctor that should be incorporated in the divorce proceedings.[2]

---

1. The *index* to the record runs some thirteen pages.

2. Among other items, the order included the following, all relevant to the appeal at hand:

6. The plaintiff, Sharan B. Dababnah shall have the exclusive use, possession, and ownership of the IRA account currently in her name in the amount of $30,253.66, as of the date of the separation of the parties.
7. The defendant, Mousa I. Dababnah is directed to, and shall, provide to the Court within thirty (30)[sic] of the date of the entry of this Final Order, all information pertaining to the Putnam Investment Education Account, his IRA account, and any pension or retirement account maintained for his benefit. . . .
9. The plaintiff, shall be awarded one-half of the investment account maintained at Wheat First–Butcher Singer Securities Firm, and being account number [omitted], with the plaintiff's share of said account being $300,916.50, and it is further ORDERED that Wheat First–Butcher Singer roll over from said account, an [sic] into an account in the name of the plaintiff, Sharan B. Dababnah, the sum of $300,916.50
10. The real estate located at 611 North Kanawha Street, Beckley, Raleigh County, West Virginia, and the three lots adjoining thereto, the residence at Shady Spring, West Virginia,

including 5.95 acres, and the lot at Pine Hill, Summers County, West Virginia, shall be sold forthwith through local real estate agencies.
11. The plaintiff, Sharan B. Dababnah, shall be awarded in lieu of alimony, the following lump sums:
a) All net proceeds derived from the sale of the real estate at 611 North Kanawha Street, Beckley, Raleigh County, West Virginia, and the three lots adjacent thereto.
b) All net proceeds derived from the sale of the residence at Shady Spring, West Virginia, including the 5.95 acre tract.
c) All net proceeds derived from the sale of the lot at Pine Hill, Summers County, West Virginia.
d) The life insurance policy through Life of West Virginia Insurance Company, and said company shall be directed to forthwith transfer said policy, including all cash value contained therein, to the plaintiff. . . .
16. The record of this case shall remain open at any time in the future upon discovery of other assets maintained and controlled by the defendant Mousa I. Dababnah, the values and or circumstances of which are unknown to the plaintiff, Sharan B. Dababnah, and upon becoming aware of the same, the plaintiff, Sharan B. Dababnah, may file a petition herein seeking relief in the form of equitable distribution with regard to the same. . . .

On October 24, 1995, the doctor appealed this final decision of the law master to this Court, and on October 9, 1996, this Court refused his petition for appeal. After several delays the Circuit Court of Raleigh County entered an order on May 14, 1999, making final dispositions of the contested assets. The doctor moved the circuit court to reconsider this order, and on May 28, 1999, the circuit court entered an order denying this motion for reconsideration. Thus, it is from this order of May 28, 1999, which essentially reaffirmed the dictates of the May 14th order, that the doctor appeals.

We have granted the doctor's appeal as to six specific issues, discussed with greater particularity below. For the reasons set forth, we affirm the order of the circuit court.

## II.

### STANDARD OF REVIEW

■ We have before established our standard of review in cases such as this:

> In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Syl. pt. 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995). We also note that our review of any award of attorney fees or costs is limited:

> "In a suit for divorce, the trial [court] . . . is vested with a wide discretion in determining the amount of . . . court costs and counsel fees, and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that he has abused his discretion. Syllabus point 3, [in part] *Bond v. Bond*, 144 W.Va. 478, 109 S.E.2d 16 (1959)." Syl. Pt. 2, [in part] *Cummings v. Cummings*, 170 W.Va. 712, 296 S.E.2d 542 (1982).

Syl. pt. 4, *Ball v. Wills*, 190 W.Va. 517, 438 S.E.2d 860 (1993).

## III.

### DISCUSSION

One item at issue in this case is the correct disposition of the passive appreciation of certain funds, found by the court below to be marital property. The Code defines the term "marital property:"

(11) "Marital property" means:

(A) All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this state, except that marital property shall not include separate property as defined in subdivision (16) of this section; and

(B) The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from: (i) An expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property; or (ii) work performed by either or both of the parties during the marriage.

W. Va.Code § 48-2-1 (1999).

There is no question that the funds at issue in the Wheat First Account and the One Valley Bank Profit Sharing Account, discussed below, are marital funds. Excluding any contributions either party might have made post-marriage, the money deposited in these accounts clearly came from "earnings acquired by either spouse during [the] marriage." *Id.*

■ Thus, the only issue subject to even limited dispute is what should happen to the

increase in value of these accounts, or, in other words, the "passive appreciation." The statute defines this term as well, but in the context of separate, not marital, property:

(19) "Separate property" means: ....

(F) Any increase in the value of separate property as defined in paragraph (A), (B), (C), (D) or (E) of this subdivision which is due to inflation or to a change in market value resulting from conditions outside the control of the parties.

W. Va.Code § 48–2–1 (1999).[3] We rephrased this distinction in another divorce case:

Passive appreciation of separate property of either of the parties to a marriage, or that increase "which is due to inflation or to a change in market value resulting from conditions outside the control of the parties," is separate property which is not subject to equitable distribution. W. Va. Code § 48–2–1(f)(6) (1986).

Syl. pt. 1, *Shank v. Shank*, 182 W.Va. 271, 387 S.E.2d 325 (1989). Again, in the context of a discussion of *separate* property, we noted that, "[t]his statutory language illustrates the distinction between 'active' and 'passive' appreciation, with only active appreciation [of separate property] being subject to the marital property definition." *Smith v. Smith*, 197 W.Va. 505, 508, 475 S.E.2d 881, 884 (1996).

■ Put simply, if property is separate property, and it increases in value because of market forces or inflation (beyond the control of either party), then this passive increase in value is also separate property. It is obvious to this Court that the corollary also holds true; namely, if *marital* property increases in value due to market forces or inflation,

then that passive increase in value is also *marital* property. Thus, any increase in the marital property held in the Wheat First Account or the One Valley Profit Sharing Account, which we discuss below, is also marital property. With this in mind, we turn to the doctor's assignments of error regarding these accounts.

### A. *The Wheat First Account*

At some point during the marriage, the couple established an investment account with the firm of Wheat First—Butcher Singer. At the time of the entry of the family law master's decision, the Wheat First Account had a value of approximately $600,000. The June 1995 order granted Sharan half of that account, and established her half to be worth $300,916.50. She never received this amount. In order to divide this account evenly, the court instructed the stock brokerage firm to make two lists, dividing the assets roughly in half. The doctor was to choose a list, and Mrs. Dababnah was to receive the securities set forth on the other list.

The doctor never made this choice, so the court, in the order of May 14, 1999, ordered that the stock brokerage firm use the earlier-prepared lists and place the assets from list "A" into a separate account for Sharan Dababnah, with the assets from list "B" going to the doctor. In this way, whatever appreciation had occurred in the securities would accrue to the benefit of both parties. If either party had made contributions after the June 1995 order, those amounts and any appreciation of those amounts were to go to the contributing party, only.[4]

---

**3.** That entire portion of the statute reads:

(19) "Separate property" means:

(A) Property acquired by a person before marriage; or

(B) Property acquired by a person during marriage in exchange for separate property which was acquired before the marriage; or

(C) Property acquired by a person during marriage, but excluded from treatment as marital property by a valid agreement of the parties entered into before or during the marriage; or

(D) Property acquired by a party during marriage by gift, bequest, devise, descent or distribution; or

(E) Property acquired by a party during a marriage but after the separation of the parties and before the granting of a divorce, annulment or decree of separate maintenance; or

(F) Any increase in the value of separate property as defined in paragraph (A), (B), (C), (D) or (E) of this subdivision which is due to inflation or to a change in market value resulting from conditions outside the control of the parties.

W. Va.Code § 48–2–1 (1999).

**4.** The order gave the brokerage firm the authority "to use its discretion to assure that said distribution is as equal as is possible, given the nature of the assets." The order also provided that any

■ The effect of this May 14, 1999 order granted Sharan approximately half of the account's May 1999 value. The doctor argues that his wife should receive the fixed amount of $300, 916.50 that was established in the earlier order, and not half of its May 1999 value, as he bore the risk of any devaluation of the account during the intervening period; that is, he argues, he would have had to produce $300,916.50 for Sharan, even if the assets had decreased in value. Sharan Dababnah argues that any increase in value amounts to "passive appreciation" of a marital assets and that she is entitled to half of that appreciation. We disagree with the doctor.

As we stated above, an increase in the value of a separate, non-martial asset, though such increase normally would not be considered marital property, can sometimes be viewed as marital property, under the appropriate circumstances (i.e., when there is an increase in the value of that separate, non-marital asset due to active appreciation). Bearing that in mind, then *any* increase in the value of a *marital* asset, whether that increase came from passive or active appreciation, should be considered *marital* property. Thus, we affirm the ruling of the lower court awarding Sharan Dababnah half the value of the account, using the means described in the order of May 14, 1999.[5] To do otherwise would reward the doctor for his delay, and would encourage future litigants to adopt the same "scorched earth" defense employed by the doctor in this divorce.

### B. *One Valley Bank Profit Sharing Account*

■ The doctor and his wife were also the owners of a so-called "profit sharing" account maintained with One Valley Bank of West Virginia. Apparently this account was created using funds earned by the doctor during the course of the marriage. Just as we find

the money in the Wheat First Account to be marital, we likewise regard all of the funds in the profit sharing account to be marital assets, with Sharan Dababnah entitled to her share. The lower court found in favor of Sharan Dababnah with regard to this account, but the doctor maintains that he should not have to share these funds with his wife, because the divorce order of June 22, 1995, did not specifically address this account. We disagree with the doctor, as the final order left the door open for an evaluation and distribution of assets such as those in this account. Specifically, that order stated:

> The record of this case shall remain open at any time in the future upon discovery of other assets maintained and controlled by the defendant Mousa I. Dababnah, the values and or circumstances of which are unknown to the plaintiff, Sharan B. Dababnah, and upon becoming aware of the same, the plaintiff, Sharan B. Dababnah, may file a petition herein seeking relief in the form of equitable distribution with regard to the same. . . .

The doctor claims his wife knew of the account, and because it was not addressed in the divorce order, she could not later relitigate the proper distribution of the money in the account. However, although Sharan Dababnah may have known of the existence of the account, she did not know its value. Without such information, the court could not make a proper disposition of the assets. The record indicates that the doctor refused to answer the court-ordered discovery regarding the value of the account.[6]

Again, it would be inappropriate for us to reward the doctor's lack of cooperation by finding in his favor. The only reason that Sharan Dababnah did not know the value of the account was because of the doctor's refusal to disclose that information. Thus, the

---

post-marital contributions (and any appreciation of those contributions) be credited to the party making said contributions.

5. If the division called for in the May 14, 1999 order has already occurred, such division should stand. If such division has not occurred, it should be made as called for in the order of May 14, 1999.

6. Furthermore, at the hearing of February 18, 1998, counsel for the doctor did not object to the equal division of the One Valley Bank profit sharing account, but only argued with plaintiff's counsel regarding the appropriate date to use to obtain the account's value.

lower court order as to the division of the profit sharing account is affirmed, and the assets will be divided as described in the lower court's order of May 14, 1999.[7]

### C. Award of Attorney's Fees

■ In the order of May 14, 1999, the lower court ordered that the doctor pay certain attorney fees to counsel for Sharan Dababnah, which were submitted in an unitemized format from her counsel. The doctor disputes this award of attorney fees, and argues that at least some portion of these fees actually represents fees incurred in a federal case filed by the doctor against his wife's counsel, among others. The doctor argues that, because counsel's request for attorney fees in that federal case was denied, that the instant award of fees in the state lawsuit was invalid. Rarely we will interfere with the discretion of a trial judge in an award of such fees:

> As we noted above, circuit courts have broad discretion in ascertaining the specific amount of attorney's fees that are reasonable in a particular case. *See* Syl. pt. 4, in part, *Ball v. Wills*, 190 W.Va. 517, 438 S.E.2d 860 (1993). While this Court will, on occasion, review the propriety of such an award, we generally accord great deference to the amount of attorney's fees granted by a circuit court.

*Daily Gazette Co., Inc. v. West Virginia Dev. Office*, 206 W.Va. 51, 63–64, 521 S.E.2d 543, 555–56 (1999). It is clear from the record that counsel made a good faith effort to separate any time he spent responding to the federal case from that time he spent working on the underlying divorce action. The judge was aware of the federal case, as well as this question of which case produced the fees at issue. It was well within the lower court's discretion to award these fees, and this aspect of the decision of the lower court is affirmed.

### D. Disputed Amount of Child Support

■ Another assignment of error made by the doctor is that, in the final order of May 14, 1999, the court made a mathematical error in calculating the amount of child support owed by the doctor. Specifically, the court calculated the amount owed by the doctor to be $35,254.30, and the doctor calculates the amount to be $31,731.16. We note that Sharan Dababnah had to resort to court-ordered suggestions to receive the money that she has received to date. We have long held and often reaffirmed that we leave great discretion in these matters to the trial court:

> Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused.

Syllabus, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977). The judge was aware of the conduct of the parties and of the fact that no interest was awarded to Sharan Dababnah on the child support amounts that had gone unpaid. Considering these factors, we cannot say that the trial judge abused his discretion when he awarded to Sharan Dababnah the larger amount of $35,254.30. Thus, in this regard, the lower court's decision is affirmed.

### E. Shady Springs Property

■ The doctor maintains that the trial judge incorrectly treated two judgment liens on the couple's property in Shady Springs as non-marital debts. In the final order of May 14, 1999, the judge ruled that two debts to medical supply companies that had attached to the Shady Springs property should be charged exclusively to the doctor. As we noted, *supra*, under the final divorce order, that property was to be sold, with the proceeds going to Sharan Dababnah in lieu of alimony.

Sharan Dababnah had in her possession approximately $10,000 worth of savings bonds, half of which rightfully belonged to the doctor. After determining that the debts on the house were non-marital debts, and in order to clear title to the property, the court

---

7. Again, if the division ordered by the circuit court on May 14, 1999 has occurred, that division should stand.

ordered that Sharan Dababnah liquidate the doctor's share of the bonds and use those proceeds to pay off the debts from the medical supply companies, crediting any remaining amount against the doctor's other obligations to her. The doctor maintains that, although the collection actions were filed well after the parties separated, that the debts were incurred during the marriage. We disagree.

■ First, we point out that the liens did not attach until after the final divorce order of June 1995. Also, there is evidence in the record that the doctor's counsel admitted that the debts were non-marital debts at the hearing held on February 18, 1998. Finally, we note that the focus of the process should be on the amounts owed between husband and wife:

> The paramount goal of a divorce proceeding is a just and equitable resolution of the interests and rights of the divorcing spouses. The asserted interests of third parties in marital property are best resolved in legal actions separate and apart from the divorce proceeding.

Syl. pt. 5, *Boyle v. Boyle,* 194 W.Va. 124, 459 S.E.2d 401 (1995). We concur with the trial court's finding that the liens represented non-marital debts, and with its decision to use the bond proceeds to discharge these debts.

### F. *House at 611 Kanawha Avenue*

■ Finally, the doctor alleges that the trial court erred when it ordered the sale of certain property located on North Kanawha Street in Beckley, West Virginia. As stated above, the divorce order of June 22, 1995 declared that the house should be sold and the proceeds granted to Sharan Dababnah in lieu of alimony. The order made no specific mention of the address 611 and ½ North Kanawha Street, which was a vacant lot next to the house that had been purchased by the Dababnahs sometime after the purchase of the residence at 611.

When, after many delays, a purchaser stepped forward to buy the house, the judge had to order a sale because of the doctor's refusal to cooperate. After that order of March 12, 1996, it was discovered that the purchaser believed he was buying the entire property, i.e., the house at 611, and the vacant lot, which apparently served as the side yard of the property, at 611 and 1/2. Thereafter, upon motion by Sharan Dababnah, the court issued a "clarified order" on July 26, 1996, in which the judge specifically described the property to be conveyed in the sale, i.e., both 611 and 611 and ½ North Kanawha Street.

Dr. Dababnah contested this order, and requested a hearing before the circuit court, but for some reason did not appear. The court issued yet another order on August 23, 1996, commanding the sale of the entire property (both addresses) as described in the prior order. The doctor did not appeal that final order to this Court at that time; furthermore, the sale of this property is not addressed in the orders of May 14, and May 28, 1999, that are the basis of the instant appeal. The doctor may not now raise this issue before this Court, as the time for an appeal of this particular decision has expired:

> No petition shall be presented for an appeal from any judgment rendered more than four months before such petition is filed with the clerk of the court where the judgment being appealed was entered: Provided, That the judge of the circuit court may, prior to the expiration of such period of four months, by order entered of record extend and reextend such period for such additional period or periods, not to exceed a total extension of two months, for good cause shown, if the request for preparation of the transcript was made by the party seeking such appellate review within thirty days of the entry of such judgment, decree or order.

W. Va.Code § 58-5-4 (1998) (1999 cum. supp.); *Accord,* Syl. pt. 1, *Coonrod v. Clark,* 189 W.Va. 669, 434 S.E.2d 29 (1993). The lower court resolved the issue of the sale of the North Kanawha Street properties in its August 23, 1996 order; the doctor did not then appeal that decision; and the lower court did not address that issue in its orders of May 14 or May 28, 1999. Consequently, any dispute over the sale of the North Kanawha Street properties is not properly before

this Court; thus, the order and sale of 1996 remain valid.

## IV.

## CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Raleigh County is affirmed, and all funds shall be disposed of as called for in the court's order of May 14, 1999.

Affirmed.

Chief Justice MAYNARD, deeming himself disqualified, did not participate in the decision in this case.

Justice DAVIS, deeming herself disqualified, did not participate in the decision in this case.

Judge TOD J. KAUFMAN, sitting by temporary assignment.

Judge MARTIN J. GAUGHAN, sitting by temporary assignment.