**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**September 2016 Term**

No. 15-0506

**FILED**

**November 15, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**P. A.,**
**Respondent Below, Petitioner,**

**V.**

**T. A.,**
**Petitioner Below, Respondent.**

Appeal from the Circuit Court of Kanawha County
Honorable Charles King, Judge
Civil Action No. 11-D-1029
AFFIRMED

Submitted: September 7, 2016
Filed:  November 15, 2016

James M. Cagle
Charleston, West Virginia
Attorney for the Petitioner

Lyne Ranson
Charleston, West Virginia
Attorney for the Respondent

**JUSTICE DAVIS delivered the Opinion of the Court.**

1.      "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard.  We review questions of law *de novo*."  Syllabus, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

2.      "'[W. Va. Code § 48-1-233 (2001) (Repl. Vol. 2015)], defining all property acquired during the marriage as marital property except for certain limited categories of property which are considered separate or nonmarital, expresses a marked preference for characterizing the property of the parties to a divorce action as marital property.'  Syllabus point 3, *Whiting v. Whiting*, 183 W. Va. 451, 396 S.E.2d 413 (1990)."  Syllabus point 2, in part, *Staton v. Staton*, 218 W. Va. 201, 624 S.E.2d 548 (2005).

3.      "In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family [court] and should not be disturbed on appeal absent an abuse of discretion.  In determining whether to award attorney's fees, the family [court] should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the

i

effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request." Syllabus point 4, *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996).

4.      "Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Syllabus point 4, *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986).

**Davis, Justice:**

P. A. ("Husband"),[1] respondent below, appeals from an order entered May 15, 2015, in the Circuit Court of Kanawha County. By that order, the circuit court affirmed various rulings made by the family court. On appeal, Husband claims error in the classification of certain property as marital property, in the calculation of his gambling losses, in denying him credit for payments he made during the parties' separation, and in ordering him to pay one-half of the attorney's fees incurred by petitioner below, T. A. ("Wife"). Wife has filed cross-assignments of error challenging the calculation of amounts due her on one of the marital assets and the failure to award her a cash sum to equalize the distribution of marital assets. Having considered the parties' briefs and oral arguments, as well as the relevant law, we find no error. Therefore, we affirm the May 15, 2015, order of the Circuit Court of Kanawha County.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Husband and Wife were married on September 29, 1994.[2] During the course of the marriage, in 1999, the couple acquired an interest in Komax, LLC ("Komax"), a

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials to protect the identities of the individuals involved in this case. *See, e.g., Mark V.H. v. Dolores J.M.*, 232 W. Va. 378, 388 n.1, 752 S.E.2d 409, 419 n.1 (2013) (per curiam). *Cf.* W. Va. R. App. P. 40(e)(2).

[2]The marriage produced one child who has attained the age of majority.

business equipment company of which Husband was a founding partner.[3]  In addition to being a partner in Komax, Husband also was responsible for overseeing the service department.

Husband and Wife separated in May of 2011, and Wife petitioned for divorce during that same month.[4]  Sometime during the period between their separation and divorce, Husband's employment and partnership in Komax were both terminated by a vote of the remaining partners.  The record demonstrates that the business relationship was terminated as a result of Husband's inattentiveness to the business and continued problems resulting from his frequent gambling, including his practice of using his Komax credit card to obtain cash advances while at a local casino.[5]

---

[3]At its founding, Komax was owned by four partners.  At some point prior to the time relevant to this case, the number of partners dropped to three.

[4]Wife initially sought divorce based upon irreconcilable differences.  She later amended her asserted ground for divorce, and the divorce ultimately was granted based upon the parties having lived separate and apart from each other for one year pursuant to W. Va. Code § 48-5-202 (2001) (Repl. Vol. 2015).  Wife alleges that husband refused to admit irreconcilable differences.

[5]One of the Komax partners states in an affidavit that, in a period of approximately fourteen months, Husband took sixty-seven cash advances totaling $100,717.50.  The partner explained that Husband repaid the funds to the company over time through payroll deductions, but contended that the advances "created a drain on cash flow for Komax and created difficulty with meeting payroll and other business obligations."  The card had been intended for business purposes only, and the partners had agreed to charge no more than $300 per month each on their respective cards.

It is undisputed that the value of the partnership interest in Komax, which was $768,240.00 at the time of the parties' separation, had increased to $1,408,438 at the time of Husband's termination from the company. In addition, the Komax operating agreement contained a clause stating that a partner who is terminated from the company involuntarily shall continue to share in profits and losses for sixty days following the meeting at which the partner is voted out. In accordance with this provision, Komax paid $102,905 in profits for the sixty-day period. The remaining partners of Komax also agreed to buy the parties' one-third share of a beach condominium that had been jointly purchased by the Komax partners approximately one year before Husband and Wife separated. The partners agreed on a price of $90,000 payable in three installments of $30,000 each.

Husband and Wife were granted a divorce by final order of the family court on March 11, 2014. Pertinent to this appeal, the order awarded Wife one-half of the value of the parties' share of Komax at the time of Husband's termination from the company and also divided the value of the beach condominium equally between the two. Although Husband had requested credit for his payments of marital expenses during the pendency of the divorce, the family court declined to award such credit. The grounds for the family court's denial related to Husband's habitual gambling, which, the family court found, resulted in Husband dissipating marital funds by an amount of *at least* $160,620. This amount was equal to documented gambling losses Husband incurred at one casino from the year 2008 until the

3

parties' separation in May 2011. Thereafter, by order entered on August 18, 2014, the family court ordered Husband to pay Wife $50,689.05 as one-half of her attorney's fees, and ordered monthly payments to Wife in light of Husband's failure to pay Wife her share of $60,000 in installment payments he had received from Komax for the beach condominium.

Husband filed a timely appeal of the family court's orders in the Circuit Court of Kanawha County. By order entered October 10, 2014, the circuit court denied the appeal, in part, and remanded the case to the family court for consideration of an apparent mathematical error.[6] The family court entered its final order on remand on March 9, 2015. Following a denial of Wife's motion to reconsider the March 9, 2105, order, Husband filed a petition for appeal in the circuit court and Wife filed a cross petition for appeal. The circuit court, finding no error, summarily denied both by order entered May 15, 2015. The instant appeal, and Wife's cross-assignments of error, followed.

## II.

### STANDARD OF REVIEW

Our review of this matter is well established:

---

[6]The circuit court noted that, in making his argument that there was an error, Husband referred to evidence not adduced during the family court hearings. Accordingly, the circuit court remanded so that the family court could hear and consider the evidence.

4

In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004). *Accord* W. Va. Code § 51-2A-15(b) (2001) (Repl. Vol. 2016). With the foregoing standards as our guide, we consider the issues raised in this appeal.

# III.

# DISCUSSION

## A. *Determination of Marital Property*

Husband first argues that the circuit court erred in determining that certain assets were marital property. Specifically, Husband argues that the circuit court erred in finding three specific assets were solely marital property: (1) the increase in value of Komax during the period between the parties' separation and divorce; (2) sixty-days worth of profits paid following Husband's termination from Komax; and (3) the total value of the one-third ownership of the beach condominium. We address each of these assets in turn.

**1. Komax.** The circuit court affirmed the family court's ruling that found the increase in value of the Komax partnership between the time of the parties' separation and Husband's termination was marital property insofar as the partnership itself was marital

property and the increase in value resulted from market forces that were beyond Husband's control and from the efforts of his partners with no contribution from him.[7] In the alternative, the circuit court found that valuing the partnership as of the date of Husband's termination from Komax provided a more equitable result pursuant to W. Va. Code § 48-7-104(1) (2001) (Repl. Vol. 2015) due to Husband's dissipation of marital funds.[8]

Husband argues that it was error to value Komax as of the date of his termination from the company. Asserting that the lower courts ignored the fact that West Virginia is a "dual property" jurisdiction, he contends that the date of the parties' separation

---

[7]The family court observed that "the evidence was clear and convincing that the increase in value happened despite [sic] of him and not because of him." Indeed there was evidence presented that Husband frequently failed to come to work, sometimes for days at a time; when he was there he often watched TV, slept at his desk, and/or failed to work a full day; he was stripped of his oversight responsibilities for the service dispatchers due to his work deficiencies that had left the department in disarray; he failed to return phone calls from clients and employees; and his use of the company credit card for extremely large cash advances, though they were repaid, created a cash flow problem for the company and required it to move funds in order to make payroll.

[8]In this regard, the family court found that Husband: encumbered the marital home by refinancing it, resulting in a loss in wife's share of the equity of an unknown amount; drained a marital account of $16,446.68; emptied an IRA account, an unknown portion of which was marital property; looted the parties' primary retirement account of between $75,000 and $87,000; took unauthorized cash advances on his company credit card in the amount of $100,717.50, which was repaid from marital property; dissipated the marital estate through provable gambling losses of $160,620 at *one* casino (the family court opined that actual losses likely were higher); raided the marital estate to such an extent that it is impossible to accurately determine how much was dissipated; and failed to perform work for Komax prior to the parties' separation, which undoubtedly diminished the value of the parties' most important asset, their interest in the company.

6

is the proper date upon which to value the company as a marital asset, rendering the increase in value, which occurred after that date, separate property belonging solely to him. Husband further contends that the circuit court's factual finding that the increase in value of Komax was a passive increase is "utter nonsense." He contends that the increase was due to the post-separation efforts of "people working together [to] solicit and bid for the contracts" that led to the increased value of the company. Although he contends that his activity of running the service department contributed to the company's growth during the time following the parties' separation, and he asserts that the family court's findings to the contrary are "against the weight of the evidence," he directs this court to no portion of the record to support his assertion. As to the alternative reasoning by the family court that valuing the partnership as of the date of Husband's termination from Komax provided a more equitable result pursuant to W. Va. Code § 48-7-104(1), Husband asserts that the resulting division is not equitable insofar as it provides the wife with compensation over and above her portion of the amount that Husband was found to have dissipated from the marital estate.

Wife responds that the partnership in Komax was obtained during the marriage and is, therefore, clearly marital property. She points out that, pursuant to W. Va. Code § 48-7-104, the family court was not limited to using the value of the business as of the date of the parties' separation, but may consider a later date when it is more appropriate for attaining an equitable result. She reasons further that the partnership interest in Komax did not cease to

7

be marital property simply because the parties separated. With regard to husband's active participation toward increasing the value of the company, Wife directs this Court's attention to the testimony of one of the founding partners of Komax, who stated that, after the date of the parties' separation, Husband provided no contribution to the business that would increase its value.

We find no error in the manner in which the value of the parties' interest in Komax was resolved below. The real issue here involves the *classification* and *valuation* of property in connection with a divorce. In this regard, it has been observed that

> it is important to draw a clear distinction between [the] date on which the parties' assets are *classified* and the date on which they are *valued*– the *date of valuation*. These dates appear at first to be similar, but the policies behind them are very different. The date of classification should ideally be set at the actual termination point of the marital partnership, so that assets which are not actual fruits of the parties' joint efforts are not included in the marital estate. The date of valuation, by contrast, should ideally be set as close to trial as possible, so that the court's division of property is based upon the most current financial information available. These differing policies frequently require that court[s] use different dates for purposes of classification and valuation . . . .

1 Brett R. Turner, *Equitable Distribution of Property* § 5:28, at p. 423 (3d ed. 2005).

It is undisputed that, at the time of the parties' separation, their one-third interest in Komax was marital property. Husband, however, argues that, after the date of

separation, any increase in the value of Komax was "acquired" by him and thereby became his separate property. To support his claim that the increased value of Komax belongs solely to him, Husband relies on authority pertaining to *separate* property:

> Passive appreciation of *separate property* of either of the parties to a marriage, or that increase "which is due to inflation or to a change in market value resulting from conditions outside the control of the parties," is separate property which is not subject to equitable distribution. W. Va. Code § 48-2-1(f)(6) (1986).

Syl. pt. 1, *Shank v. Shank*, 182 W. Va. 271, 387 S.E.2d 325 (1989) (emphasis added). Expanding upon this authority, however, and contrary to Husband's analysis, this Court has concluded that,

> if property is separate property, and it increases in value because of market forces or inflation (beyond the control of either party), then this passive increase in value is also separate property. *It is obvious to this Court that the corollary also holds true; namely, if marital property increases in value due to market forces or inflation, then that passive increase in value is also marital property*.

*Dababnah v. Dababnah*, 207 W. Va. 585, 589, 534 S.E.2d 781, 785 (2000) (per curiam) (emphasis added). *Accord McGee v. McGee*, 214 W. Va. 36, 41 n.3, 585 S.E.2d 36, 41 n.3 (2003). In fact, the *Dababnah* Court went on to conclude that "*any* increase in the value of a *marital* asset, whether that increase came from passive or active appreciation, should be considered *marital* property." 207 W. Va. at 590, 534 S.E.2d at 786 (finding post-separation increase in value of investment account classified as marital property also was marital property and wife entitled to half). *See also Burch v. Burch*, 395 S.C. 318, 717 S.E.2d 757

9

(2011) (finding that, where partnership in company was marital property, post-filing increase in value of partnership that was passive, *i.e.* not the result of Husband's activities, also was marital property); 2 Turner, *Equitable Distribution of Property* § 7:2, at p. 617 ("Appreciation in existing marital assets after the date of classification should be marital property if the appreciation is caused by inflation or market forces rather than by active postmarital efforts.").

The record in this case clearly establishes that the parties' interest in Komax was marital property. The record is equally clear that, after the parties' separation, Husband engaged in no activity directed to increasing the value of that asset. Accordingly, the circuit court correctly ruled that the post-separation increase in value of Komax remained marital property.

**2. Post-Termination Komax Profits.** A signed draft of the Komax operating agreement in the record contains a paragraph, paragraph 4.8, pertaining to the termination of a partner. A partner is referred to in the agreement as a "member." The operating agreement states at paragraph 4.8:

> Termination of a Member Without Cause. The Company may involuntarily terminate any Member at any time, with or without cause, upon the affirmative vote of a majority of all Units of the Company, inclusive of the Units of the Member under consideration. An involuntary termination shall commence immediately after the applicable Company meeting

except that *the involuntarily terminated Member shall continue to share in profits and losses for sixty (60) days after such meeting.*

(Emphasis added). On April 22, 2013, after the parties' separation, a majority of the Komax Members held a special meeting and voted to terminate Husband's membership in the company pursuant to the above quoted provision. The family court found that, because the Komax partnership was a marital asset, and the contractual entitlement for profit sharing in the event of an involuntary termination of the partnership had existed for many years during the course of the marriage, the post-termination profits were a marital asset.

Husband contends that Komax paid $102,905 as Husband's share of the company's profits for the sixty days following the special meeting terminating his membership in the company. Husband argues that his share of profits, which he refers to as severance, was acquired after the parties' separation, as a result of his termination from Komax, and is, therefore, his separate property.

Wife contends that Husband mischaracterizes the payment of $102,905 as severance. She states that the funds represent the parties' one-third share of Komax profits as provided for in paragraph 4.8 of the operating agreement.

11

Based upon the same reasoning set out above in support of our conclusion that the post-separation increase in value of the Komax partnership was marital property, we likewise agree with the family court's conclusion that profits paid as a result of the termination of that marital asset, *i.e.*, the partnership, also are marital property.

**3. Condominium.** In June of 2010, approximately a year prior to the date upon which the parties separated, the Komax partners jointly purchased a beach condominium ("condo") with each of the three partners having a one-third ownership interest therein.

Husband argues that the condo should have been classified by the family court as dual property, part marital and part separate. He asserts that he made a total of thirty-three monthly payments of $2,000 as payment for the one-third interest in the condo, with twenty-two of those payments being made during the period the parties were separated. Accordingly, he claims that one-third of the interest in the condo was marital (the portion for which he made eleven mortgage payments during the course of the marriage), and two-thirds of the interest in the condo were his separate property (the portion for which he made twenty-two mortgage payments during the separation).

Wife argues that both the family court and the circuit court were correct in concluding that the one-third ownership in the condo was marital property and correctly divided the asset equally between Husband and Wife.

"Marital property" is defined in W. Va. Code § 48-1-233 (2001) (Repl. Vol. 2015), which provides in relevant part:

> (1) *All property and earnings acquired by either spouse during a marriage*, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this State, except that marital property does not include separate property as defined in section 1-238 [§ 48-1-238] . . . .

(Emphasis added). This Court previously has recognized:

> "[W. Va. Code § 48-1-233 (2001) (Repl. Vol. 2015)], defining all property acquired during the marriage as marital property except for certain limited categories of property which are considered separate or nonmarital, expresses a marked preference for characterizing the property of the parties to a divorce action as marital property." Syllabus point 3, *Whiting v. Whiting*, 183 W. Va. 451, 396 S.E.2d 413 (1990)."

Syl. pt. 2, in part, *Staton v. Staton*, 218 W. Va. 201, 624 S.E.2d 548 (2005).

13

It is undisputed that the parties' one-third interest in the condo was obtained during the marriage, therefore the family court correctly classified it as marital property. Payments toward the purchase price made by Husband after the parties' separation do not change the character of the property. Accordingly, we find no error in the family court's finding that the condo was marital property.

## B. *Gambling Losses*

Relying on activity reports provided by the local casino where Husband gambled, and testimony by the track's representative stating the reports have an accuracy rate of ninety-five to ninety-eight percent, the family court found that husband incurred a net loss of $160,620 from 2008 through May 2011, by virtue of his gambling at just that one casino. The family court found this gambling loss to be "a waste and dissipation of marital funds." The court went on to find that Husband had sole control over all of the parties' financial assets of more than nominal value, and that it was difficult to calculate the total amount of his gambling losses. The family court additionally concluded that Husband had raided both marital and separate assets in various ways to fund his gambling addiction, including refinancing the marital home resulting in a loss of equity, refinancing rental property,

draining and emptying various financial/retirement accounts, and taking large cash advances on his company credit card that were repaid from marital funds.[9]

Husband claims that the circuit court's calculation of the amount of Husband's gambling losses was erroneous and against the weight of the evidence. Husband asserts that he gambled using withdrawals from his BB&T account, and records of that account demonstrate a small net loss for the years 2009 through 2011 of $40,102. He further claims that his annual salary, as found by the family court, was $130,000 to $140,000 per year. Based on these figures, Husband avers that he could not have gambled $913,721 as found by the family court. He additionally argues that the casino records are not an accurate representation of his gambling activities because they are "activity reports" and theoretically would show $913,000 worth of activity if he gambled 913,000 times with the same dollar.

Wife responds that the testimony and documentary evidence clearly showed that Husband regularly gambled during the marriage and lost marital money. She provides a summary of the testimony of the casino director regarding Husband's activities there and the fact that the net losses are accurate to within ninety-five to ninety-eight percent. She

_____

[9]See *supra* note 8 for a more detailed description of Husband's dissipation of marital assets.

15

claims that Husband dissipated substantial marital property to support his gambling addiction.

As previously noted, "we review the findings of fact made by the family court judge under the clearly erroneous standard." Syl., in part, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803. There is sufficient evidence in the record to support the family court's finding that Husband incurred a net gambling loss of $160,619.23. Although Husband urges an isolated examination of his bank account records to calculate his gambling losses, such an examination would not provide an accurate measure of Husband's gambling losses insofar it fails to account for the documented advances on his company credit card, which advances were received at the casino and amounted to $100,717.50. This evidence refutes Husband's claim that he only "gambled using withdrawals from his BB&T account," and demonstrates that an isolated view of bank account records would not provide accurate portrayal of his gambling activities. Moreover, Husband's argument that his annual salary was insufficient to support the level of gambling found by the family court ignores the family court's findings that Husband raided other assets and used his company credit card to obtain funds for gambling. Accordingly, we find no clear error in the family court's factual finding that Husband sustained $160,620 in gambling losses.

16

### C. Conrad Credits

The family court refused Husband's request to receive credit pursuant to *Conrad v. Conrad*, 216 W. Va. 696, 612 S.E.2d 772 (2005) (per curiam), for certain payments he made after the parties' separation. The family court provided the following rationale for declining to grant Husband credit for the payments he made:

> (a) Up until the time of his discharge[,] husband had an annual salary of $80,000, plus a partner's draw of $60,000 and, in addition to those monies, his state and federal taxes were paid by Komax;
>
> (b) Wife, on the other hand, was working at an hourly rate of $12.84;
>
> (c) Many of the payments for which he seeks reimbursement (e.g. the mortgage on the home, his BB&T line of credit, the purchase of a vehicle for their daughter) were increased or incurred by his unilateral choice and/or in order to provide him with gambling cash; and
>
> (d) It would be fundamentally unfair to provide *Conrad* credits to husband while denying wife dissipation credits for the marital home, the retirement accounts and the $100,000 "take back" by Komax for husband's excessive cash advances.

The family court further found that,

> [w]hen there are substantial liquid assets to be divided that will give each of the parties a secure income and allow their individual development of other financial opportunities, and when both parties would be entitled to credits in amounts that are not at all certain due to the financial misconduct of one of the parties, the Court should choose a method of property distribution that disentangles the parties from one another as

17

> fairly, quickly and cleanly as possible. *Cross v. Cross*, 178 W. Va. 563, 363 S.E.2d 449 (1987).

The circuit court, in finding no abuse of discretion by the family court, observed that Husband does not dispute the facts as set out by the family court.

Husband argues that the family court abused its discretion by depriving him of credit under *Conrad* for interim payments made on marital debt and home maintenance. According to Husband, he made such payments in the amount of $83,419, and, therefore, one-half of that amount should have been credited against the distribution of marital property. He notes that the family court already had accounted for his "dissipation" of the marital estate by granting Wife a one-half interest in the increased value of Komax that occurred after the parties' separation, one-half of the sixty days of post-termination profits paid by Komax in accordance with the operating agreement, and a one-half interest in the condo. Moreover, husband submits that wife had exclusive possession of the family home during the separation while Husband paid the mortgage, Wife's car payment, Wife's credit-card debt, lawn care, insurance, alimony, and child support. Finally, husband contends that the family court refused to allow Husband credit for an overpayment of child support in the amount of $17,673.56. Husband contends that the failure to grant him *Conrad* credits was an abuse of discretion on the part of the lower courts.

18

Wife responds that the family court did not abuse its discretion by denying

*Conrad* credits for payments made by Husband[10] between the parties' separation and divorce

considering Husband's dissipation of extensive marital assets during the marriage to support

his gambling addiction.  Based upon Husband's dissipation of marital assets, Wife asserts

that the circuit court did not abuse its discretion by denying Husband credit.

In *Conrad*, this Court recognized that,

> [r]ecoupment of payment of marital debt by one party prior to the ultimate division of marital property has often been permitted upon a final equitable distribution order.  *See Jordan v. Jordan*, 192 W. Va. 377, 452 S.E.2d 468 (1994) (final allocation of marital debt permitted husband to recoup his expenses related to the marital home); *Kapfer v. Kapfer*, 187 W. Va. 396, 419 S.E.2d 464 (1992) (the parties agreed to allow husband to recoup from home sale all mortgage principal he paid on marital home after date of separation).

216 W. Va. at 702, 612 S.E.2d at 778.  *See also* W. Va. Code § 48-5-508(c) (2001) (Repl.

Vol. 2015) ("The court *may* order either or both of the parties to pay the costs and expenses

---

[10]Wife asserts that, during a hearing on November 6, 2013, Husband submitted a demonstrative exhibit claiming he made payments and requesting credits for the following expenses: homeowners insurance, home mortgage, BB&T line of credit, *his* credit cards, the parties' *daughter's* car payment, automobile insurance for Wife's and daughter's cars, real estate taxes, personal property taxes, and license renewal.  These expenses totaled $91,219. In addition, the exhibit also set out temporary alimony of $26,000 and child support payments totaling $37,700 for which he also sought credit.  Thus, Husband's claimed expenses totaled $154,919, one-half of which equals $77,459.50.  Nevertheless, Husband now seeks credit in the amount of $83,419, without any detailed explanation of how that figure was calculated. In addition, Wife disputes that Husband overpaid any child support, and she asserts that spousal support and child support payments are not subject to *Conrad* credits.

of maintaining and preserving the property of the parties during the pendency of the action. At the time the court determines the interests of the parties in marital property and equitably divides the same, the court may consider the extent to which payments made for the maintenance and preservation of property under the provisions of this section have affected the rights of the parties in marital property and may treat such payments as a partial distribution of marital property. . . ." (emphasis added)).

Upon considering the rulings of the family and circuit courts, we find no abuse of discretion. Husband's primary grounds for asserting an abuse of discretion is his claim that the family court already had increased Wife's equitable distribution share to offset his dissipation of marital assets by granting her one-half of the increase in value of Komax that occurred after the parties' separation, one-half of the sixty days of post-termination profits paid by Komax in accordance with the operating agreement, and one-half of the value of the condo. Because we have determined all of these assets to be marital, they provided Wife with nothing to counter Husband's extreme dissipation of marital assets. Husband also fails to respond to the family court's finding that "[m]any of the payments for which he seeks reimbursement (e.g. the mortgage on the home, his BB&T line of credit, the purchase of a vehicle for their daughter) were increased or incurred by his unilateral choice . . . in order to provide him with gambling cash." Therefore, we affirm the circuit court's ruling granting no *Conrad* credits to Husband for payments he made after the parties' separation.

20

### D. Attorney's fees

Wife requested the family court to award her attorney's fees and costs in the amount of $101,378.11. By order entered August 18, 2014, the family court granted Wife one-half of her attorney's fees, and ordered Husband to pay $50,689.05 for said fees. The family court based its ruling upon W. Va. Code §§ 48-1-305(a) and (c) (2001) (Repl. Vol. 2015). In making this award, the family court found that,

> (a) A significant portion of this case concerned [Husband's] gambling losses; while the evidence of such losses was clear and convincing, [Husband] persisted in asserting that he had no such losses, thereby causing [Wife] to expend fees and costs on an issue that was beyond all reasonable cavil;
>
> (b) [Husband's] gambling problem caused him to pillage many of the marital assets and, therefore, [Wife] was required to expend fees and costs discovering their current value as well as any current encumbrances placed against them, many of which were incurred without her approval or knowledge;
>
> (c) [Husband's] gambling problem caused him to lose his interest in Komax, LLC[,] and created considerable tension between him and his partners which spilled over into this divorce and caused [Wife] to unnecessarily expend fees and costs on discovery related to the value of [Husband's] one-third interest in the business; and
>
> (d) Absent his gambling problem, a division of the parties' assets could have been quickly and cleanly accomplished; instead, this case became protracted, difficult and contentious.

The family court further declared that a significant portion of its time in this case was due solely to Husband pursuing defenses that were without merit.

21

Husband concedes that the family court considered numerous factors, but argues that the court improperly weighed facts that militated significantly against the award of attorney's fees. Husband asserts that the family court wrongly concluded that Wife's standard of living would decrease tremendously if she paid her own fees and costs, and that Husband bore sole responsibility for driving up the cost of the litigation. Husband contends that awarding Wife one-half of her attorney's fees and costs was an abuse of discretion on the part of the family court.

Wife responds that there was no error made in awarding her one-half of the amount she sought for attorney's fees and costs. She contends that she had to file four motions to compel to get discovery responses and documents she requested. In addition, she claim she had to file three contempt petitions to get Husband to pay his child support obligations, his share of their child's non-insured medical expenses, and other obligations. Furthermore, she asserts that tracking Husband's gambling and dissipation of marital assets was enormous work that required subpoenas to obtain financial documents and casino records. Finally, Wife states that she had to obtain a domestic violence emergency protective order in November 2011. Based on these facts, Wife asserts there was no abuse of discretion.

As the family court noted:

> (a) Costs may be awarded to either party *as justice requires* and in all cases the court, *in its discretion*, may require payment of costs at any time and may suspend or withhold any order until the costs are paid.
>
> . . . .
>
> (c) When it appears to the court that a party has incurred attorney fees and costs unnecessarily because the opposing party has asserted unfounded claims or defenses for vexatious, wanton or oppressive purposes, thereby delaying or diverting attention from valid claims or defenses asserted in good faith, the court may order the offending party, or his or her attorney, or both, to pay reasonable attorney fees and costs to the other party.

W. Va. Code § 48-1-305(a) & (c) (emphasis added). Furthermore, this Court has held:

> In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family [court] and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family [court] should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

Syl. pt. 4, *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996). In addition, the *Banker* Court explained that, in determining the reasonableness of requested attorney's fees, a court may examine the factors set out in Syllabus point 4 of *Aetna Casualty & Surety Co. v. Pitrolo*:

23

Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

176 W. Va. 190, 342 S.E.2d 156 (1986).

In deciding to award attorney's fees, the family court analyzed each of the factors set out in *Banker* and *Pitrolo*, and explained how each factor weighed in favor of awarding some attorney's fees to Wife. The family court ultimately concluded, based upon its thorough examination of all the relevant factors, that Wife was entitled to only one-half of her attorney's fees. We find no abuse of discretion on the part of the family court. *See* Syl. pt. 4, in part, *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 ("In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family [court] and should not be disturbed on appeal absent an abuse of discretion."). Accordingly, we affirm the family court's award of attorney's fees.

24

### E. Cross-Assignment of Error: Condo Distribution

Wife argues that she has not received her share of the proceeds from the condo buy-out and that the lower courts miscalculated when they determined that husband currently owes wife only $16,960 for that asset. Husband responds that there has been no math error.

In its final order on remand, entered March 9, 2015, the family court concluded that Wife was owed $15,721.00 for her share of the condo. Wife filed a motion to reconsider. Thereafter, by order entered March 27, 2015, the family court correct its earlier order to reflect that Wife was actually owed $16,960.00. By order entered May 15, 2015, the Circuit Court found no error. Likewise, based upon the record submitted on appeal, we find no error in the determination that Wife is owed $16,960.00 for her share of the condo.

### F. Cross-Assignment of Error: Cash Equalization

Wife finally argues that the family court erred by not awarding her a cash sum or property to equalize the distribution of marital assets and debts as required by W. Va. Code § 48-7-103 (2001) (Repl. Vol. 2015) & W. Va. Code § 48-7-104 (2001) (Repl. Vol. 2015). Husband responds that Wife engages in some "odd math computations" to argue she is owed a cash equalizer.

25

We decline to address this issue finding it to have been inadequately briefed. The parties arguments on this issue are comprised primarily of conclusory statements. "Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived." Syl. pt. 6, *Addair v. Bryant*, 168 W. Va. 306, 284 S.E.2d 374 (1981). *See also State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal."). *Accord* W. Va. R. App. P. Rule 10(c)(7) & (f).

## IV.

## CONCLUSION

As explained more fully in the body of this opinion, we find no error in this matter. Accordingly, we affirm the May 15, 2015, order of the Circuit Court of Kanawha County.

Affirmed.

26