IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**December 6, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**REBECCA M.,**
**Petitioner Below, Petitioner**

**v.) No. 24-ICA-137** (Fam. Ct. of Berkeley Cnty. Case No. FC-02-2016-D-313)

**NATHANIEL M.,**
**Respondent Below, Respondent**

**and**

**NATHANIEL M.,**
**Respondent Below, Petitioner**

**v.) No. 24-ICA-113** (Fam. Ct. of Berkeley Cnty. Case No. FC-02-2016-D-313)

**REBECCA M.,**
**Petitioner Below, Respondent**

### MEMORANDUM DECISION

In this consolidated appeal from the Family Court of Berkeley County, both Nathaniel M. ("Father") and Rebecca M. ("Mother") appeal the Family Court of Berkeley County's March 1, 2024, order.[1] The parties' arguments on appeal center on the family court's resolution of the issues of child support, education of the parties' minor child, and attorney's fees.[2]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See*, *e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Father is self-represented. Mother is represented by Cinda L. Scales, Esq.

This case arises from dueling petitions for modification filed by both parties and a motion for attorney's fees filed by Mother. The parties were divorced by final order entered August 15, 2016. The parties have one minor child born of the marriage. At the time the dueling petitions were filed, Father exercised parenting time on alternating weekends from Thursday evening until Monday. In his petition, Father sought equal parenting time. In her petition, Mother sought to terminate Father's parenting time during the school week due to the child's tardiness issues. The family court re-appointed a guardian ad litem that was previously appointed in this matter.[3]

On September 20, 2022, the family court specifically ordered Father to disclose his self-employment income from his business. On April 10, 2023, the family court entered another order that required both parties to file their 2021 tax returns and specifically ordered the guardian ad litem to review Father's tax returns for the purpose of making recommendations to the family court as to what income should be attributed for child support calculations. On April 13, 2023, the family court entered an order in response to Father's argument that he could not disclose the details of the sale of his business due to a nondisclosure agreement. The family court ordered that Father was required to disclose the amount of the sale proceeds and entered a protective order requiring that all information disclosed relative to the sale not be duplicated or distributed. On May 12, 2023, Father disclosed the Limited Liability Company Dissociation Agreement which showed that he received $750,000.00 and certain real property in exchange for his interest in the company.

On June 22, 2023, the family court entered an order following a status hearing. In that order, the family court again ordered Father to disclose tax returns and financial documents related to the sale of his business. The family court found that there were certain documents not disclosed by Father on the basis that they did not relate to the financial part of the transaction. The family court ordered Father to disclose such documents for in-camera review. The family court also ordered Father to execute a release in favor of Mother to allow her to obtain his tax documents directly from the Internal Revenue Service due to concerns over whether Father's disclosures were accurate.

On July 19, 2023, Mother moved to continue the hearing scheduled for July 20, 2023, on the basis that Father failed to disclose his current income or compensation he received from the buyout of the business.

On June 27, 2023, the family court entered its Order from In-Camera Review. In that order, the family court noted that it reviewed the nondisclosure agreement, and it provided exclusions to confidentiality including information which was required to be

[3] The Guardian ad Litem was Gregory A. Bailey, Esq. Mr. Bailey did not appear on appeal.

disclosed by judicial or administrative proceedings. As such, the family court ordered Father to disclose a full accounting of the consideration he received from his sale of his interest in the business.

On October 23, 2023, Mother filed her Motion for Attorney Fees which sought reimbursement of her attorney's fees from Father on the basis that Father had more resources than her and had unnecessarily increased the costs of the litigation.

Finally, on November 16, 2023, the family court began hearings. The family court heard three days of testimony on the petitions and motion for attorney's fees. Following the hearings, on March 1, 2024, the family court entered the order on appeal.[4]

In that order, the family court granted a 50-50 custodial allocation to the parties. In regard to choice of education for the parties' child, the family court found that the overall atmosphere at the child's current school, which Mother worked at, was toxic toward Father and his new wife due to the parties' divorce and therefore the child should attend a new school. The family court noted that it was not the court's place to choose which faith-based school was most appropriate for the parties given the limited information the family court possessed. The family court allowed the parties to attempt to agree on a new faith-based school for the child but ordered if the parties could not agree, the child would be enrolled in public school in Mother's school district.

In regard to child support, the family court initially noted that the original $250.00 per month award of child support was not based on any child support worksheet and it was unclear how the court determined that child support amount. The family court determined that Mother's current income was $2,946.67 monthly. The family court then noted that Father's income was not easily calculated because he was an entrepreneur and did not receive a per se salary. The court found that Father received a monthly salary of $4,166.67 from his company but had recently sold his business and received distributions in the amount of $941,944.00 over the past two tax years. The court went on to find that Father was also currently working on research and development for a new company. The family court found that it was appropriate to subtract the fifteen percent rate for capital gains tax from the $941,944.00 then average that sum over the forty-one months that Father spent as owner of the company. This led to a monthly average of $19,528.11. The family court then opted to attribute Father income at one half of $19,528.11 per month. The family court reasoned that reserving half of those funds would be appropriate with the obvious goal of

---

[4] On May 8, 2024, this Court remanded this case back to the family court for the limited purpose of entering an order on the outstanding motion for reconsideration filed with the family court. The Court held the matter in abeyance pending resolution of that outstanding motion. On May 30, 2024, the family court entered its amended final order, which, for the purposes of the issues raised on appeal, was largely the same as the order originally appealed. On that same date, this Court filed an order lifting the abeyance.

Father to once again create a valuable and profitable business. The family court then used the Extended Share Parenting worksheet to set Father's child support amount at $483.00 per month.

In regard to attorney's fees, the family court found that given the complexity of the arguments presented, Father's unwillingness to concede, and Father's lack of candor regarding his financial disclosures, it was essential for Mother to hire legal counsel to protect her interest. The family court also noted that Father's income was three times higher than Mother's and therefore an award of attorney's fees pursuant to West Virginia Code §§ 48-1-305(a) and (b) was appropriate. Further, the court found that pursuant to West Virginia Code § 48-1-305(c), Father had asserted unfounded claims or defenses for vexations or oppressive purposes. Namely, Father failed to timely disclose his disassociation payments. Such delay caused several unnecessary hearings including an in-camera review of certain documents. The family court concluded that if Father had timely disclosed his financial status, the parties and court could have devoted their time to the real issues before the court, such as the issue regarding the education of the child. Despite Mother seeking the entirety of her attorney's fees related to the petitions totaling $12,541.64, the family court ordered Father to pay Mother $4,000.00 in attorney's fees in $500.00 payments beginning March 1, 2024.

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

First, the parties both assert that the family court erred in calculating child support. Mother argues that more income should be attributed to Father while Father argues that the money he received from the sale of his business should not be considered at all. We disagree with both parties. West Virginia Code § 48-1-205(a) states:

> Income may be attributed to a parent if the court evaluates the specific circumstances of the parent to the extent known, including such factors as the parent's assets, residence, employment and earnings history, job skills, educational attainment, literacy, age, physical and mental health, criminal record, and other employment barriers, and record of seeking work, as well

as the local job market, the availability of employers willing to hire the parent, prevailing earnings level in the local community, and other relevant background factors in the case.

Given the unique nature of Father's work as an entrepreneur and the unpredictability of his income, there is certainly more than one way the family court could have determined Father's income for the purpose of child support. However, the record in this matter clearly reflects that the family court carefully considered the evidence before it and exercised its discretion to craft an equitable solution that took into account the uniqueness of the matter. Because we find the family court carefully considered the evidence before it and properly applied the law, we find no abuse of discretion in regard to the calculation of child support.

Next, both parties assert that the family court erred in awarding attorney's fees. Mother argues that the family court should have awarded her the full amount of attorney's fees she sought. Father argues that not only should the family court not have awarded Mother attorney's fees, but he should have been awarded attorney's fees instead. We disagree. First, Father, who is self-represented, is ineligible to request reimbursement of legal fees. *See Smith v. Bradley*, 223 W. Va. 286, 292, 673 S.E.2d 500, 506 (2007). Second, the award of attorney fees falls within the sound discretion of the family court and should not be disturbed on appeal absent an abuse of discretion. *P.A. v. T.A.*, 238 W. Va. 216, 793 S.E.2d. 866 (2016); *Arneault v. Arneault*, 216 W. Va. 215, 605 S.E.2d. 590 (2004). With this deferential standard in mind, we affirm the family court's attorney's fees award to Mother.[5] Pursuant to *Banker v. Banker*, 196 W. Va. 535, 550-551, 474 S.E.2d 465, 480-481 (1996), the family court should consider the following when determining whether attorney's fees are appropriate:

> [T]he party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either

---

[5] In its review of attorney's fees, the family court correctly noted that this Court held in *Daniel Y. v. Anne Y.*, No. 23-ICA-34, 2023 WL 7202961 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision), that *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996) did not apply in actions involving custody. The family court instead applied West Virginia Code § 48-1-305. Upon further review, the relevant inquiry is whether the dispute before the family court "stems" from a divorce or custody proceeding and not what type of issue is currently pending before the family court. *Paugh v. Linger*, 228 W. Va. 194, 200, 718 S.E.2d 793, 799 (2011). To the extent that we held differently in *Daniel Y.*, we hereby clarify that the origination of the action is the determining factor of whether the *Banker* factors or West Virginia Code § 48-1-305 applies when assessing attorney's fees in family court matters.

party making the divorce action necessary, and the reasonableness of the attorney's fee request.

Here, Father earns three times as much as Mother on a monthly basis and it was essential for Mother to hire counsel due to Father's lack of candor in regard to his dissociation payments and the complexity of litigating the same. Moreover, it is clear that Mother's attorney obtained a beneficial result as the money received from the sale of Father's company is being used toward the support of the parties' child. However, except for the issue regarding his dissociation payments, Father largely pursued and defended the petitions in good faith. Accordingly, our review of the record demonstrates that the family court did not abuse its discretion in awarding Mother some, but not all, of her attorney's fees under the facts of this case.

Finally, Mother asserts that the family court erred in determining where the child will attend school. Mother argues that the family court should have ordered the child attend a faith-based school. Again, we disagree. Mother has cited no authority to support her argument that it is reversible error for the family court to order a child be enrolled in public school when the parents cannot agree on a private faith-based school for the child to attend and the family court is without sufficient information to choose a private faith-based school for the parents. *See* Rule 10(c)(7) of the W. Va. R. App. P. As mentioned previously, the family court held that it was without proper information to determine for the parties which faith-based school would be appropriate for them. Mother does not assert that the family court had the proper information to determine which faith-based school would be appropriate for them. Accordingly, the family court did not abuse its discretion by allowing the parties to attempt to agree on which faith-based school would be appropriate for them and ordering the child be enrolled in public school if the parties could not agree.

Therefore, based on the foregoing, the March 1, 2024, Final Order of Modification of the Family Court of Berkeley County is affirmed.

Affirmed.

**ISSUED:** December 6, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

6