# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**David Lamm,**
**Petitioner**

**vs) No. 17-1075** (Kanawha County 02-D-1861)

**Patricia Lamm,**
**Respondent**

**FILED**

**March 29, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Respondent Patricia Lamm ("Ms. Lamm") and Petitioner David Lamm ("Mr. Lamm") were divorced by final order entered by the family court in 2005 and affirmed by the circuit court in 2007. This appeal concerns a "Savings and Investment Plan" ("savings account") and a retirement plan that were addressed in the family court's 2005 final divorce order. The final divorce order provided that the "parties shall divide equally [Mr. Lamm's] retirement plan with a stipulated value of $88,965.00." Further, the final divorce order awarded the savings account solely to Mr. Lamm. Approximately nine years after the circuit court's final order was entered, Ms. Lamm filed an amended qualified domestic relations order ("QDRO") with the family court, seeking a portion of Mr. Lamm's savings account. Protracted litigation followed in which Ms. Lamm submitted multiple QDROs to the family court regarding the savings account and the retirement plan. On July 12, 2017, the family court entered a QDRO that awarded Ms. Lamm 34.78% of Mr. Lamm's retirement plan. By order entered on October 17, 2017, the circuit court affirmed the family court's order.

In this appeal, Mr. Lamm, by counsel Charles R. Webb, argues that the circuit court erred by affirming the family court's 2017 order that awarded Ms. Lamm 34.78% of the retirement plan. Ms. Lamm, by counsel C. Page Hamrick, urges this Court to affirm the circuit court's order. After review and for the reasons stated herein, we conclude that the circuit court erred by affirming the family court's order. We therefore reverse the circuit court's October 17, 2017, order, and remand this matter to the circuit court for further proceedings consistent with this decision. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure for disposition by memorandum decision.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal concerns a savings account and a retirement plan that Mr. Lamm had through his employer.[1] Both of these accounts were at issue during the parties' initial divorce proceedings before the family court. The parties were married in 1975. According to the family court, their separation date was August 30, 2002. Both parties were represented by counsel throughout the divorce proceedings, which culminated with the family court entering a final divorce on January 4, 2005.

The family court's January 4, 2005, final order addresses both the savings account and the retirement plan. Regarding the savings account, the family court's order provides:

12. [T]he Court finds that the following personal property is owned by the parties and concludes as a matter of law as the following values: . . . (s) Savings and Investment Plan $29,322.

14. **This Court grants unto David W. Lamm, the following personal items and liquid assets: . . . (g) savings and investment plan (includes debt).**

19. That prior to the separation of the parties, the parties were possessed of a savings and investment plan of approximately $77,122.00. [Mr. Lamm], who had exclusive use and control of the savings and investment plan liquidated a substantial portion of the plan in an effort to pay off loans for a variety of automobiles, credit card accounts, home mortgage and other debts and maintenance of the parties including taxes on the liquidation of the same whereby Thirty Six Thousand Three Hundred Fifty Eight Dollars ($36,358.00) in loans were accrued.

20. That at the date of the separation of the parties there was a savings and investment plan balance of Twenty Nine Thousand Three Hundred Twenty Two Dollars ($29,322.00).

21. The Court finds that the expenditures by [Mr. Lamm] prior to or about the time of separation of the parties was prudent, reasonable and for marital purposes. There

---

[1] Mr. Lamm was employed by Dupont. According to the appendix-record, Mr. Lamm began working at Dupont in 1976. He retired on December 31, 2016.

should be no reimbursement of the monies expended back into the savings and investment plan.

(Emphasis added.)

The family court's final order also addressed the retirement plan:

12. [T]he Court finds that the following personal property is owned by the parties and concludes as a matter of law as the following values: . . . (u) [Mr. Lamm's] retirement [plan] $88,965.

27. **The parties shall divide equally [Mr. Lamm's] retirement plan with a stipulated value of $88,965.00. Such plan shall be divided by a Qualified Domestic Relations Order which shall be prepared by [Ms. Lamm's] counsel with the cooperation of [Mr. Lamm] and his counsel.**

(Emphasis added.)

Ms. Lamm appealed the family court's final order to the circuit court, raising a number of assignments of error including the family court's ruling that she "was not entitled to reimbursement of the monies expended" from the savings account.[2] Ms. Lamm did not challenge the family court's ruling that the retirement plan would be split by the parties, nor did she dispute the finding that it had a stipulated value of $88,965.00. By order entered on March 28, 2007, the circuit court affirmed the family court's order. The circuit court specifically addressed the family court's ruling regarding the savings account and concluded that the family court's ruling was not clearly erroneous nor an abuse of discretion. The circuit court's order denied Ms. Lamm's appeal in "its entirety" and provided that "[t]his matter is removed from the active docket of the Court."

After the circuit court's order was entered, counsel for Ms. Lamm prepared two QDROs. The first QDRO, dated December 3, 2007, was for Mr. Lamm's "Dupont Savings and Investment Plan." This QDRO named Ms. Lamm as the "alternate payee" and stated that she was entitled to 50% of Mr. Lamm's savings and investment plan as of December 31, 2004. This QDRO was not signed by the family court judge, nor was it entered. We note that the family court's final order, which was affirmed by the circuit court, did not award Ms. Lamm any portion of the savings account. Thus, it is unclear why

---

[2] Ms. Lamm also challenged the family court's 1) award of spousal support, 2) award of the marital home to Mr. Lamm, 3) valuation of an account entitled "Ameri-Reach," and 4) valuation of certain stock options.

counsel for Ms. Lamm prepared a QDRO for an account that was awarded solely to Mr. Lamm.

The second QDRO, also prepared by counsel for Ms. Lamm and dated December 3, 2007, was for Mr. Lamm's "Dupont Pension and Retirement Plan." This QDRO named Ms. Lamm as the "alternate payee" and stated that she was entitled to 50% of Mr. Lamm's retirement plan as of August 30, 2002. The family court entered the "Dupont Pension and Retirement Plan" QDRO on February 15, 2008 ("2008 retirement plan QDRO"). Following entry of the 2008 retirement plan QDRO, no activity occurred in this case for approximately eight years.

In March 2016, counsel for Ms. Lamm submitted a new QDRO to the family court seeking a portion of Mr. Lamm's savings account. This QDRO, entitled "Amended Qualified Domestic Relations Order (Dupont Savings and Investment Plan)," states that Ms. Lamm, as the alternate payee, is awarded 50% of Mr. Lamm's "accrued benefit" as of August 30, 2002. The family court entered this QDRO on the same date it was submitted. The family court did not hold a hearing on the QDRO prior to its entry.[3] There was no explanation provided by the family court or by the language contained in the QDRO explaining why it was granting relief—awarding Ms. Lamm a portion of the savings account—that is inconsistent with the final divorce order entered by the family court in 2005 and affirmed by the circuit court in 2007.

On November 4, 2016, counsel for Ms. Lamm submitted an "Amended QDRO (Dupont Pension and Retirement Plan, Title I)" to the family court. This QDRO provides that Ms. Lamm is "awarded 50% of [Mr. Lamm's] monthly benefit from the Plan." This QDRO removed the accrual language that was contained in the 2008 retirement plan QDRO, which stated that Ms. Lamm was entitled to 50% of his retirement benefit "*as of August 30, 2002*." (Emphasis added.) This QDRO does not include any factual findings explaining why Ms. Lamm is entitled to 50% of Mr. Lamm's *total* retirement plan benefit. The family court entered this amended QDRO on November 15, 2016.

Mr. Lamm retired on December 31, 2016. Because the November 2016 QDRO was entered and had been submitted to Mr. Lamm's employer, Ms. Lamm began receiving 50% of Mr. Lamm's monthly retirement benefit in January 2017.[4]

---

[3] Mr. Lamm was not given an opportunity to address this QDRO prior to its entry. It is unclear why this opportunity was not afforded to Mr. Lamm.

[4] This information comes from statements made by counsel during oral argument. Counsel for both parties agreed that that Ms. Lamm has been receiving 50% of Mr. Lamm's monthly retirement benefit since January 2017.

4

Mr. Lamm filed a motion for emergency ex parte relief in the family court on February 2, 2017. This motion states that "[Ms. Lamm] had no claim to and was awarded no portion of [Mr. Lamm's] Savings and Investment Plan." Further, Mr. Lamm argued that the amended 2016 retirement plan QDRO awarding Ms. Lamm 50% of the total retirement plan was improper. Mr. Lamm's motion asserts that "as a result of the entry of the [amended 2016 retirement plan] QDRO prepared by [Ms. Lamm's] counsel and entered by this Court, the Plan is withholding fifty percent of [Mr. Lamm's] monthly benefit for payment to [Ms. Lamm]."

In response to Mr. Lamm's motion, Ms. Lamm explained that she had inquired with Mr. Lamm's employer regarding his retirement account in March 2016 in order "to obtain her interest in the retirement account." Ms. Lamm alleged that "there were no funds available in the plan to fulfill the obligations of the QDRO, and that the plan account had been paid out in full in 2015. . . . A QDRO was entered to receive one-half of [Mr. Lamm's] Dupont Pension and Retirement Plan, Title I, since [Ms. Lamm] cannot get what [Mr. Lamm] illegally removed from his retirement plan."[5] At the conclusion of Ms. Lamm's response motion, she appears to concede that she is only entitled to the relief contained in the 2005 final divorce order entered by the family court, she stated: "WHEREFORE, Respondent Patricia A. Lamm requests the emergency motion be denied and that [Mr. Lamm] be ordered to pay over to [Ms. Lamm] the sum of $44,982.50[6] plus interest thereon from the Final Order entered January 4, 2005, plus attorneys fees for this proceeding."

The family court held a hearing on March 6, 2017. The hearing focused on the amount Ms. Lamm should be receiving from Mr. Lamm's retirement plan. Counsel for Mr. Lamm informed the court that Ms. Lamm had been receiving 50% of Mr. Lamm's total retirement benefit since January 2017. Ms. Lamm's counsel conceded that she was receiving 50% of Mr. Lamm's total retirement plan benefit, and told the court "the problem is, the [2005 final divorce] order . . . is written that she gets half of – half of $88,000 and it's – you know, so she's, she's getting half of $88,000, but, you know, she's getting it in a . . . different way than maybe she, you know, contemplated." The hearing ended without the family court making a ruling as to the amount Ms. Lamm should be receiving from Mr.

---

[5] We are confused by Ms. Lamm's assertion that the retirement "plan had been paid out in full in 2015." Based on the appendix-record, Mr. Lamm did not receive any of his retirement benefit until January 2017. Since January 2017, Mr. Lamm (and Ms. Lamm) have received a monthly retirement payment from this plan. Thus, the assertion that the "plan account had been paid out in full in 2015" is unsupported by the record.

[6] While Ms. Lamm requested the sum of $44,982.50, we note that half of the stipulated value of the retirement plan ($88,965) is $44,482.50.

5

Lamm's retirement plan. Also, the family court did not make any ruling regarding the March 2016 savings account QDRO that it had previously entered.

On April 18, 2017, Ms. Lamm filed another proposed amended QDRO regarding the retirement plan. This QDRO removed the language granting Ms. Lamm 50% of the total retirement plan and replaced it with the following language: "The Alternate Payee [Ms. Lamm] is awarded THIRTY-FOUR AND 78/100 PERCENT (34.78%) of [Mr. Lamm's] accrued benefit now payable to participant." Mr. Lamm objected, arguing that the April 2017 retirement plan QDRO

> assigns an incorrect amount of accrued benefit to [Ms. Lamm]. [Mr. Lamm's] accrued benefit increased yearly and the parties were not married in the later years of his accrual, as such a simplified percentage of [Mr. Lamm's] total accrued benefit based on [the] number of years married will not yield an accurate award amount. [Ms. Lamm] should be awarded [Mr. Lamm's] accrued DUPONT PENSION AND RETIREMENT PLAN benefit calculated considering the actual years in which the parties were married.

The family court overruled Mr. Lamm's objection to the April 2017 retirement plan QDRO and entered it on July 12, 2017. The family court's order provides:

> After receiving argument of counsel, the Court finds that case law directs that where retirement benefits [are] allocated using the deferred distribution method, post separation enhancements should be allocated between the parties calculated by multiplying the fixed percentage retirement benefits by the coverture fraction (ratio of the number of years of employment during marriage prior to the separation of the parties to the total number of years employed).

Mr. Lamm appealed the family court's ruling to the circuit court.[7] The circuit court denied Mr. Lamm's petition for appeal and affirmed the family court's order. In so ruling, the circuit court found "[i]t is apparent from the record that the [April 2017 retirement plan QDRO] was necessitated by [Mr. Lamm's] failure to disclose the defined

---

[7] Mr. Lamm also filed a motion for reconsideration with the family court. The family court denied this motion.

benefit plan to which [Ms. Lamm] was entitled at the time of the parties' divorce."[8] After entry of the circuit court's order, Mr. Lamm filed the present appeal.

## II. STANDARD OF REVIEW

This Court has previously addressed our standard of review for an appeal of a circuit court's order affirming a family court's order. In syllabus point 1 of *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004), we held:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

With this standard in mind, we turn to the parties' arguments.

## III. ANALYSIS

We begin our analysis by highlighting the unusual procedural history of this matter. In essence, the issue before us is simple—what portion of Mr. Lamm's retirement plan should be awarded to Ms. Lamm. However, since Ms. Lamm filed the March 2016 savings account QDRO, this case has become tangled and convoluted: multiple QDROs and amended QDROs concerning both the savings account and retirement plan were submitted to the family court. The family court held a number of hearings and after entering a ruling, Mr. Lamm simultaneously filed a motion for reconsideration with the

---

[8] We note that Ms. Lamm filed an amended QDRO, not a petition for a constructive trust. Pursuant to W.Va. Code § 48-7-206(2) (2001):

> (2) If any party deliberately or negligently fails to disclose information which is required by this part 2 and in consequence thereof any asset or assets with a fair market value of five hundred dollars or more is omitted from the final distribution of property, the party aggrieved by the nondisclosure may at any time petition a court of competent jurisdiction to declare the creation of a constructive trust as to all undisclosed assets, for the benefit of the parties and their minor or dependent children, if any, with the party in whose name the assets are held declared the constructive trustee, such trust to include such terms and conditions as the court may determine. The court shall impose the trust upon a finding of a failure to disclose such assets as required under this part 2.

family court and an appeal to the circuit court. In attempting to untangle the various QDROs and arguments raised by the parties, we will individually address the savings account and the retirement plan.

## A. Savings Account

Nine years after the circuit court affirmed the final divorce order, Ms. Lamm submitted the March 2016 savings account QDRO to the family court. This QDRO was entered by the family court on the same day it was submitted. There was no hearing on this QDRO and Mr. Lamm was not given an opportunity to object prior to its entry. Mr. Lamm eventually objected to the March 2016 savings account QDRO in his February 2017 motion for emergency ex parte relief. Mr. Lamm's February 2017 motion also objected to the entry of the November 2016 retirement plan QDRO. During the hearing on this motion, the parties argued over what portion of Mr. Lamm's accounts (savings or retirement) Ms. Lamm was entitled to but did not specify which particular (savings or retirement) QDRO they were referring to when discussing the issue. The family court did not rule on either the March 2016 savings account QDRO or the November 2016 retirement plan QDRO at the conclusion of this hearing.

While subsequent litigation between the parties continued regarding the retirement plan, it does not appear that the family court ever issued a ruling addressing Mr. Lamm's objection to the March 2016 savings account QDRO.[9] For clarity sake, we will address the March 2016 savings account QDRO.

The 2005 final divorce order entered by the family court awarded the savings account solely to Mr. Lamm. Ms. Lamm timely appealed this ruling to the circuit court. By order entered on March 28, 2007, the circuit court affirmed the family court's order, specifically finding that the family court's ruling regarding the savings account was not clearly erroneous nor an abuse of discretion. Ms. Lamm did not appeal the circuit court's order.

Upon review, we find that this issue—whether Ms. Lamm was entitled to any portion of the savings account—was ruled on during the initial divorce proceedings. The family court's final divorce order, which was affirmed by the circuit court, resolved the issue. Ms. Lamm has not cited any authority or provided any reason why the final divorce order should not control this issue. Thus, we conclude that Ms. Lamm is not entitled to any portion of Mr. Lamm's savings account.

---

[9] On appeal, both parties discuss the March 2016 savings account QDRO, but mainly focus on whether the amended April 2017 retirement plan QDRO that was entered by the family court was proper.

## B. Retirement Plan

Next, we address whether the circuit court erred by affirming the family court's order entering the April 2017 amended retirement plan QDRO that awarded Ms. Lamm 34.78% of the retirement plan. The circuit court's rationale for affirming the April 2017 retirement QDRO is as follows: "It is apparent from the record that the [April 2017 retirement QDRO] was necessitated by [Mr. Lamm's] failure to disclose the defined benefit plan to which [Ms. Lamm] was entitled at the time of the parties' divorce."

Upon review, we find that the circuit court's ruling that Mr. Lamm failed to disclose "the defined benefit plan" at the time of the parties' divorce is clearly erroneous. The retirement plan was disclosed and clearly addressed by the family court during the initial divorce proceedings. Paragraph 27 of the family court's 2005 final divorce order provides:

> The parties shall divide equally [Mr. Lamm's] retirement plan with a stipulated value of $88,965.00. Such plan shall be divided by a Qualified Domestic Relations Order which shall be prepared by [Ms. Lamm's] counsel with the cooperation of [Mr. Lamm] and his counsel.

Based on the foregoing, it is clear that the retirement plan was disclosed, its value was stipulated by the parties, and a retirement plan QDRO was entered in 2008 following the circuit court's 2007 order affirming the family court's 2005 final divorce order. We find no error with the family court's 2005 final divorce order that assigned a stipulated value to the retirement plan. As this Court has previously noted, there is no single method a court must use when "distributing pension benefits at divorce because each pension plan case presents a different set of problems." *Cross v. Cross*, 178 W.Va. 563, 568, 363 S.E.2d 449, 454 (1987).[10] Ms. Lamm did not appeal the family court's 2005

---

[10] *See* Syl. Pt. 5, *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 ("When a court is required to divide vested pension rights that have not yet matured as an incident to the equitable distribution of marital property at divorce, the court should be guided in the selection of a method of division by the desirability of disentangling parties from one another as quickly and cleanly as possible. Consequently, a court should look to the following methods of dividing pension rights in this descending order of preference unless peculiar facts and circumstances dictate otherwise: (1) lump sum payment through a cash settlement or off-set from other available marital assets; (2) payment over time of the present value of the pension rights at the time of divorce to the non-working spouse; (3) a court order requiring that the non-working spouse share in the benefits on a proportional basis when and if they mature."). *See also* syl. pt. 3, *Roig v. Roig*, 178 W.Va. 781, 364 S.E.2d 794 (1987) ("When the issue in a divorce proceeding is the equitable distribution of marital property, both parties have the burden of presenting competent evidence to the trial court concerning the value of such property.").

ruling regarding the retirement plan to the circuit court. Thus, we conclude that both Mr. Lamm and Ms. Lamm are entitled to the relief contained in the 2005 final divorce order: "[t]he parties shall divide equally [Mr. Lamm's] retirement plan with a stipulated value of $88,965.00." Therefore, we find that the circuit court erred by affirming the family court's entry of the April 2017 amended retirement plan QDRO.

We emphasize that our ruling—enforcing the 2005 final order directing the parties to equally divide the stipulated value of the retirement plan—is the exact relief Ms. Lamm requested in her February 2017 response to Mr. Lamm's motion for emergency ex parte relief: "Respondent Patricia A. Lamm requests the emergency motion be denied and that [Mr. Lamm] be ordered to pay over to [Ms. Lamm] the sum of $44,982.50[11] plus interest thereon from the Final Order entered January 4, 2005[.]" Further, Ms. Lamm's subsequent April 2017 amended retirement plan QDRO, in which she requested 34.78% of Mr. Lamm's retirement plan benefit in perpetuity, was inconsistent with the relief she sought before the family court in February 2017.[12]

In sum, we reverse the circuit court's October 17, 2017, order which affirmed the family court's order entering the April 2017 amended retirement plan QDRO. We remand this case to the circuit court for entry of an order remanding this matter to the family court. Upon remand, the family court must enter an order directing that "[t]he parties . . . divide equally [Mr. Lamm's] retirement plan with a stipulated value of $88,965.00." Thus, Ms. Lamm is entitled to receive a total of $44,482.50 plus interest from the retirement plan.[13]

---

[11] *See* footnote 6.

[12] While unnecessary for the resolution of this matter, we note that this Court has previously found that judicial estoppel may be invoked when a party asserts inconsistent positions in a case. In syllabus point 2 of *West Virginia Department of Transportation, Division of Highways v. Robertson*, 217 W.Va. 497, 618 S.E.2d 506 (2005), this Court held:

> Judicial estoppel bars a party from re-litigating an issue when: (1) the party assumed a position on the issue that is clearly inconsistent with a position taken in a previous case, or with a position taken earlier in the same case; (2) the positions were taken in proceedings involving the same adverse party; (3) the party taking the inconsistent positions received some benefit from his/her original position; and (4) the original position misled the adverse party so that allowing the estopped party to change his/her position would injuriously affect the adverse party and the integrity of the judicial process.

[13] During oral argument, counsel for Mr. Lamm conceded that Ms. Lamm is entitled to "compound legal interest" on her portion of the retirement plan. After the circuit court

ISSUED:  March 29, 2019

CONCURRED IN BY:
Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins

DISSENTING AND WRITING SEPARATELY:
Justice Margaret L. Workman
Justice John A. Hutchison

**HUTCHISON, J., dissenting, joined by WORKMAN, J.:**

I respectfully dissent because this memorandum decision is contrary to law, contrary to the final divorce order, and patently unfair to Ms. Lamm.

It is undisputed that Mr. Lamm's defined benefits retirement plan ("retirement plan") was marital property subject to equitable distribution.[14] The final divorce order directed that "[t]he parties shall divide equally [Mr. Lamm's] retirement plan[,]" and that "[s]uch plan shall be divided by a Qualified Domestic Relations Order[.]" Our law specifies that when the division of retirement benefits is deferred until the benefits are mature, as has occurred in this case, then the amount each spouse will receive is calculated by application of a coverture fraction:

---

remands this matter to the family court, the family court must hold a hearing to determine the amount of interest Ms. Lamm is owed on the $44,482.50 award. Additionally, in determining the total amount owed to Ms. Lamm, the family court must determine the amount Ms. Lamm has received from the retirement plan since January 2017.  During oral argument, the parties agreed that Ms. Lamm has been receiving monthly payments from the retirement plan since January 2017, and that she had received approximately $40,000 from the retirement plan as of January 2019.

[14] In syllabus point four of *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 (1987), this Court held that pension plans are marital property available for equitable distribution. The Court observed that, "[u]nquestionably, [a spouse's] retirement account (or the right to receive future benefits from that account) is marital property." *Id.* at 567, 363 S.E.2d at 453 (parenthetical in original). Moreover, "any increase in the value of a marital asset, whether that increase came from passive or active appreciation, should be considered marital property." *Dababnah v. Dababnah*, 207 W.Va. 585, 590, 534 S.E.2d 781, 786 (2000).

5. Where retirement benefits are allocated utilizing the deferred distribution method, the non-employee spouse is awarded a fixed percentage of retirement benefits to be distributed when such benefits mature.

6. To achieve the final division of retirement benefits when utilizing the deferred distribution method, post-separation enhancements are allocated between the employee spouse and the non-employee spouse. The amount of benefits to which the non-employee spouse is entitled is calculated by multiplying the fixed percentage of retirement benefits by the coverture fraction.

7. The coverture fraction is the ratio of the number of years of employment during the marriage prior to the separation of the parties to the total number of years the employee spouse has been employed under the pension plan being addressed.

Syl. Pts. 5, 6 & 7, *McGee v. McGee*, 214 W.Va. 36, 585 S.E.2d 36 (2003).

Ultimately, in its July 12, 2017 Amended QDRO, the family court applied a coverture fraction to award Ms. Lamm 34.78% of the accrued benefits payable upon Mr. Lamm's retirement.[15] Pursuant to *McGee*, that is the correct outcome for this case. This method would fairly award Ms. Lamm her share of the marital property based upon the years of Mr. Lamm's participation in the retirement plan during their marriage, and was obviously contemplated by the directive in the final divorce order to "divide [the plan] equally" by means of a QDRO upon dissolution of the marriage. This outcome is also consistent with other cases where this Court required application of a coverture fraction. *See, e.g., Bock v. Bock*, No. 16-0817, 2017 WL 2483352 at *3-4 (W.Va. June 8, 2017) (memorandum decision) (reversing and remanding where family court used deferred distribution method for division of defined benefits retirement plan but failed to determine coverture fraction for proper division of plan assets).

Mr. Lamm argues that because the final divorce order also contained a stipulated value for this plan, then the divorce order should be interpreted to award Ms. Lamm a lump sum payment of one-half of that value, or $44,482.50. Although the majority adopts that position, it is incorrect. First, a lump sum award was not even possible. This

[15] During the family court's last hearing on May 22, 2017, Ms. Lamm's counsel explained that the 34.78% coverture fraction was calculated using Mr. Lamm's length of service with his employer and the length of the parties' marriage during that service.

12

retirement plan is a defined benefits plan. A defined benefits plan pays a retired member a monthly amount calculated using various actuarial factors such as percentage of contributions, salary, and years of service. *See Nesselroad v. Consol. Pub. Ret. Bd.*, 225 W.Va. 397, 400, 693 S.E.2d 471, 474 (2010). A QDRO cannot force a plan administrator to make a lump sum payment contrary to the plan's rules. *See* 26 U.S.C. § 414(p)(3)(A) ("A domestic relations order meets the requirements of this paragraph only if such order . . . does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan.").

Second, awarding only $44,482.50 is contrary to the final divorce order's requirement of dividing the plan equally. According to the representations of the lawyers during oral argument, the parties have each received approximately $40,000 as fifty-percent shares of this retirement plan *just in the twenty-four months* since Mr. Lamm retired.[16] Mr. Lamm will be receiving retirement payments for years to come, but even though the bulk of this retirement plan is marital property acquired during their twenty-seven-year marriage, Ms. Lamm will soon reach $44,482.50 and be cut off.

The majority cites *Cross v. Cross* for the proposition that "there is no single method a court must use" to distribute pension benefits. *See Cross v. Cross*, 178 W.Va. 563, 568, 363 S.E.2d 449, 454 (1987). However, given the facts and the current procedural posture of the case before us, that proposition is unavailing. Indeed, syllabus point five of *Cross* sets forth methods for distributing pension benefits in a divorce, but only the coverture fraction method is applicable here. Syllabus point five provides that

> [w]hen a court is required to divide vested pension rights that have not yet matured as an incident to the equitable distribution of marital property at divorce, the court should be guided in the selection of a method of division by the desirability of disentangling parties from one another as quickly and cleanly as possible. Consequently, a court should look to the following methods of dividing pension rights in this descending order of preference unless peculiar facts and circumstances dictate otherwise: (1) lump sum payment through a cash settlement or off-set from other available marital assets; (2) payment over time of the present value of the pension rights at the time of divorce to the non-working spouse; (3) a court order requiring that the non-working spouse share in the benefits on a proportional basis when and if they mature.

---

[16] *See* footnotes 5 and 13 in the majority's discussion.

*Id.* at 564, 363 S.E.2d at 450. A reading of the entire final divorce order reveals that Ms. Lamm's marital share of this retirement plan was *not* offset by a cash payment or the receipt of other assets. In the final divorce order, the family court carefully divided and allocated the parties' assets—including real property, automobiles, the savings account, even Washington Redskins NFL season tickets—and reached a division that the family court deemed equitable. It was only *after* all of the other assets were equitably allocated, that the family court ordered the parties to divide this retirement plan. Furthermore, the family court did not order Mr. Lamm to make any "payment[s] over time of the present value of the pension rights," and no such payments were made in the nearly fourteen years since the final divorce order was entered. Ms. Lamm only began receiving a share of this marital asset directly from the plan administrator after Mr. Lamm retired. In light of these facts, only the third *Cross* option is a viable remedy for this dispute: requiring the parties to share in the benefits on a proportional basis when the benefits mature. Pursuant to *McGee*, this proportional award is accomplished by the use of a coverture fraction. *See McGee*, 214 W.Va. at 38, 585 S.E.2d at 38, syl. pts. 5-7.

Instead of relying on *McGee*, and without citing to anything other than a concession by counsel during oral argument, the memorandum decision fashions a remedy of awarding Ms. Lamm "compound legal interest" on $44,482.50. This award of interest is apparently in recognition of the fact that Ms. Lamm always had a marital interest in this property, but was denied the distribution of a lump sum award at the time of divorce. However, the coverture fraction is designed to account for a delay in distributing pension assets, while also "assur[ing] [that the employee spouse] maintains the fruits of his post-divorce labor." *Id.* at 44, 585 S.E.2d at 44 (citation omitted).

For all of these reasons, I would affirm the family court's resolution of this matter in the Amended QDRO entered on July 12, 2017.[17] Accordingly, I respectfully dissent. I am authorized to state that Justice Workman joins this dissent.

---

[17] Although I would affirm the family court's ultimate decision, my reasons are different from those set forth in the circuit court's order. As recognized by the majority, the circuit court's order is based upon two clearly erroneous conclusions: that Ms. Lamm was denied her share of the separate savings account because Mr. Lamm had emptied the account, and that Mr. Lamm failed to disclose the retirement plan during the divorce proceedings. Both conclusions are negated by the record and the parties' final divorce order.